U.S. District Court
Wisconsin Eastern
OCT 28 2026
FILED
Clerk of Court

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

JOYCE FORD 4368 Freeport Way Denver, CO 80239

RALPH FORD 4056 Netherland St. Denver, CO 80249

JOE FORD 20337 E 47th Ave Denver, CO 80249

Plaintiffs,

26-C-2010

VS.

MILWAUKEE COUNTY DEPARTMENT OF SOCIAL SERVICES (DSS)

WISCONSIN DEPARTMENT OF CHILDREN AND FAMILIES (DCF)

CHILD PROTECTIVE SERVICES (CPS), Milwaukee County.

FOSTER CARE DIVISION, Milwaukee County,

Defendants.

Case No.:

## COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS

*(42 U.S.C. § 1983; 42 U.S.C. § 1985; Americans with Disabilities Act; Monell Liability)*

## TABLE OF CONTENTS

Introduction
Jurisdiction and Venue
Parties
Factual Allegations
Statement of Facts

- A. Background of the Ford Family
- B. Missing Records and Delayed Discovery
- C. Failure to Screen, Supervise, and Monitor Foster Placements
- D. Sexual Abuse of Plaintiff Joyce Ford
- E. Defendants' Knowledge and Deliberate Indifference

- F. Retaliation and Silencing of Plaintiffs
- G. Harm to Plaintiff Ralph Ford
- H. Harm to Plaintiff Joe Ford
- I. Defendants' Pattern, Practice, and Policy of Systemic Failures
-

Claims for Relief
Count I — 42 U.S.C. § 1983: Substantive Due Process Violations
Count II — 42 U.S.C. § 1983: State-Created Danger
Count III — 42 U.S.C. § 1983: Monell Liability
Count IV — Failure to Train
Count V — Supervisory Liability

Delayed Discovery Doctrine
Damages and Equitable Tolling
Prayer for Relief
Jury Demand
Exhibits

**INTRODUCTION**

Plaintiffs, Joyce Ford, Ralph Ford, and Joe Ford bring this civil rights action to seek accountability for the abuse neglect and constitutional violations they suffered as children under the custody and supervision of the state of Wisconsin and Milwaukee county. After becoming wards of the state in 1959, following the death of their mother, Plaintiffs—then orphaned children—were initially placed with relatives. The Plaintiffs lived in a stable and nurturing environment with their paternal grandparents until 1963 when their grandmother passed away. Following her death, the children were moved through additional placements and ultimately entered Milwaukee County foster care as young vulnerable children. While in state custody, they endured mistreatment, unsafe conditions, and systemic failures that deprived them of the protection the law requires for children in government care. This action seeks redress for the harm they suffered and for the decades of concealment that prevented them from learning the full truth of what was done to them. Defendants concealed, lost, destroyed, or withheld critical records—including medical reports, social worker notes, investigative files, and communications with the District Attorney—preventing Plaintiffs from discovering the true extent of the misconduct that shaped their lives

## SECTION I — JURISDICTION AND VENUE

This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, which provides a cause of action for the deprivation of constitutional rights under color of state law.
This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under federal law.
This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and (4), which provide jurisdiction over civil rights actions seeking to redress the deprivation of constitutional rights and to recover damages under federal civil rights statutes.
Venue is proper in the United States District Court for the Eastern District of Wisconsin under 28 U.S.C. § 1391(b), because the events giving rise to Plaintiffs' claims occurred in Milwaukee County, Wisconsin, which is located within this judicial district.
Defendants, acting under color of state law, committed acts and omissions within this district that violated Plaintiffs' constitutional rights.

## SECTION II — PARTIES

**Plaintiffs.**

Plaintiff, Joyce Ford is an elderly woman and resident of Colorado and was a minor child when she was placed into Milwaukee County foster care. While under the custody and supervision of the Milwaukee county and the Wisconsin department of children and families, Joyce suffered physical abuse, emotional trauma, and long-term psychological harm She brings this action to seek redress for the constitutional violations and systemic failures that deprived her of safety, protection and lawful treatment as a vulnerable child. She is a survivor of the abuse that occurred while under the control of Milwaukee county and Wisconsin state agencies.

Plaintiff, Ralph Ford is an elderly resident of Denver, Colorado. He was a minor child when he was placed into Milwaukee County foster care. While under the custody and supervision of the Milwaukee county and the Wisconsin department of children and families, Ralph suffered physical abuse, emotional trauma, and long-term psychological harm He brings this action to seek redress for the constitutional violations and systemic failures that deprived him of safety, protection and lawful treatment as a vulnerable child. he is a survivor of the abuse that occurred while under the control of Milwaukee county and Wisconsin state agencies.

Plaintiff Joe Ford is an elderly resident of Denver, Colorado. He was a minor child when he was placed into Milwaukee County foster care. While under the custody and supervision of the Milwaukee county and the Wisconsin department of children and families Joe suffered physical abuse, emotional trauma, and long-term psychological harm He brings this action to seek redress for the constitutional violations and systemic failures that deprived him of safety, protection and lawful treatment as a vulnerable child.

At all times material to this action, each of the Plaintiffs was a citizen of the United States. Each Plaintiff possessed all constitutional rights and protections guaranteed by the United States Constitution and applicable federal law, including the rights of which they were deprived by Defendants' conduct as alleged herein.

## B. Defendants

Defendant Milwaukee Couty Department of Social Services. (DSS) is a county agency of Milwaukee County, responsible for the administration and delivery of child welfare services within Milwaukee County. At all times relevant herein, DSS was acting under color of state law and was charged with legal authority and responsibility for the removal, placement, care, supervision, and protection of children — including each of the Plaintiffs — within the Milwaukee County child welfare system.

Defendant Wisconsin Department of Children and Families (DCF) is a state agency that is responsible for statewide oversight of child welfare programs, including foster care, licensing, and compliance with federal and state child-protection requirements. is a state agency of the State of Wisconsin, headquartered in Madison, Wisconsin. DCF is responsible for administering, overseeing, funding, regulating, and supervising child welfare programs and foster care services throughout the State of Wisconsin, including programs operated by Milwaukee County. At all times relevant herein, DCF was acting under color of state law. DCF is a public entity subject to suit under 42 U.S.C. § 1983, the Americans with Disabilities Act, and applicable federal law.

Defendant Milwaukee County Child Protective Services (CPS) is a Milwaukee County subdivision and operational arm of Milwaukee County DSS responsible for responding reports of child abuse and neglect, making determinations regarding the safety of children in the home, and initiating removal and foster care placement of children deemed to be in danger or at risk. At all times relevant herein, CPS was acting under color of state law and was responsible for the investigation, removal, and initial placement of each of the Plaintiffs. to allegations of child abuse and neglect, conducting investigations, and ensuring the safety of children in Milwaukee County.

Defendant Milwaukee County Foster Care Division is a subdivision of Milwaukee County responsible for the ongoing monitoring, supervision, and management of children placed in foster care within Milwaukee County. The Foster Care Division is charged with screening prospective foster parents and homes, conducting ongoing placement supervision, investigating complaints and concerns regarding foster home conditions, and ensuring the safety and well-being of children in foster placement. At all times relevant herein, the Foster Care Division was acting under color of state law and was responsible for supervising the foster care placements of each of the Plaintiffs, including the placement in which Joyce Ford was subjected to sexual abuse is responsible for screening, licensing, monitoring, and supervising foster homes and placements within Milwaukee County.

Defendants John and Jane Does 1–20 are individuals employed by Milwaukee County DSS, CPS, the Foster Care Division, or Wisconsin DCF whose identities are currently unknown. They participated in, contributed to, or failed to prevent the constitutional violations described in this Complaint.

Each of the Defendant agencies is a "person" within the meaning of 42 U.S.C. § 1983 as an entity acting under color of state law. Each Defendant exercised governmental authority and acted pursuant to official policy, custom, or practice in carrying out the acts and omissions described herein. Each Defendant is liable both directly and under principles of Monell liability for the constitutional violations alleged in this Complaint.

At all times relevant to this Complaint, each Defendant, whether acting individually or in concert with other Defendants, acted under color of law — specifically, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Wisconsin and Milwaukee County — in engaging in the acts, omissions, policies, and practices described herein.

# SECTION III — FACTUAL ALLEGATIONS

## A. Background of the Ford Family

1.Plaintiffs Joyce, Ralph, and Joe Ford were placed into Milwaukee County foster care in 1959 after the death of their mother. At the time, all three children were minors entirely dependent on Milwaukee County and Wisconsin state agencies for their safety and protection.

2.The children lived with their Paternal grandparents, Ben and Sarah Ford, who provided care and supervision until their deaths in 1963. They were then placed with their paternal uncle and his wife, Ben and Lester Ford.

3. After the death of their grandmother in 1963, the Plaintiffs were placed in the home of their paternal uncle. Although this placement was supposed to provide care, the environment was unstable and unsafe. The Plaintiffs witnessed repeated domestic abuse in the home including violence directed at their aunt, and were subjected to neglect during this period. Despite these conditions, the state returned the children to this placement multiple times, failing to protect them from exposure to ongoing domestic violence and unsafe living conditions. The children were later removed from their uncle's home due to neglect and placed in foster care by a Milwaukee County social worker.

## B. Missing Records and Delayed Discovery

4. Newly discovered records revealed previously unknown details about the children's condition, the abuse suffered, and the failures of Milwaukee County and Wisconsin DCF to protect them.
5. Many of these records were later lost, destroyed, withheld, or never produced, contributing to decades of delayed discovery and preventing Plaintiffs from understanding the full scope of the abuse, neglect, and systemic failures that occurred during their foster care placement.
6. Plaintiffs did not discover until 2026 documents that revealed previously unknown details about their foster care placement, the abuse suffered, and the failures of Milwaukee County and Wisconsin DCF to protect them.
7.These records form the basis of Plaintiffs' claims and demonstrate that Defendants' actions and omissions violated Plaintiffs' constitutional rights and caused lasting harm.

## C. Failure to Screen, Supervise, and Monitor Foster Placements

8. Exhibit A — Doctor's Report Summary: The medical examination conducted on the same day the children were removed from the foster home of Mr. and Mrs. Watson documented clear signs of abuse and neglect, including physical injuries and indicators of emotional distress. Although removal was justified based on medical evidence,
9. Milwaukee County later failed to support prosecution of the foster parent. The caseworker provided the District Attorney with false information, identifying the children's father as "Leroy Ford," a person who did not exist. This misinformation prevented the DA from obtaining necessary consent and directly caused the breakdown of the prosecution.
10. Exhibit B — Social Worker Notes Summary: Mr. Burgner's notes contained subjective, inaccurate, and derogatory descriptions of the children, including referring to them as "like animals."
11. Milwaukee County Department of Social Services (DSS), Child Protective Services (CPS), and the Foster Care Division assumed legal responsibility for screening foster homes, supervising placements, investigating allegations of abuse, and ensuring the children's well-being.
12. Despite these obligations, Defendants failed to conduct adequate screening of foster homes, failed to supervise placements, and failed to investigate multiple indicators of abuse and neglect. These failures directly contributed to the harm suffered by Plaintiffs while in state custody.
13. Throughout the children's placement, Milwaukee County personnel—including social workers, supervisors, and administrators—generated records, reports, and notes documenting concerns, observations, and communications related to the children's condition and safety.

## . D. Sexual Abuse of Plaintiff Joyce Ford

14.While in foster care, Plaintiff Joyce Ford was subjected to repeated and severe sexual abuse by the foster parent entrusted with her care. Milwaukee County placed Joyce in this

home without conducting adequate screening, failed to perform required supervisory visits, ignored clear warning signs of danger, and failed to take any protective action despite its legal duty to safeguard her.

15. The sexual abuse occurred during a period when Milwaukee County had full legal custody of Joyce and bore complete responsibility for her safety, welfare, and protection. Defendants' failure to act allowed the abuse to continue unchecked, causing profound and lasting harm.

## E. Defendants' Knowledge and Deliberate Indifference

16. Milwaukee County personnel received multiple, clear, and escalating indicators of abuse—including documented medical findings consistent with trauma, significant behavioral changes in Joyce, and direct reports expressing concern—yet took no protective action. Despite having actual notice of danger, the County failed to conduct any meaningful investigation, failed to interview the children, and failed to perform the supervisory duties required by law.

17. Milwaukee County's repeated failure to investigate, its failure to preserve critical records, and its failure to support or pursue criminal prosecution of the foster parent demonstrate a pattern of deliberate indifference to the constitutional rights of the Ford children. These omissions were not isolated mistakes but part of a systemic practice of disregarding abuse warnings, ignoring mandated-reporter concerns, and prioritizing institutional convenience over child safety.

## F. Retaliation and Silencing of Plaintiffs

18. When concerns were raised, Milwaukee County personnel did not protect the children; instead, they minimized, dismissed, or ignored the reports. Rather than investigate, County staff discouraged Plaintiffs from speaking about their experiences, silenced disclosures, and failed to document or act on critical information. At no point were Plaintiffs informed of the County's failures, nor were they given any opportunity to understand or report the abuse they were suffering.

19. Milwaukee County's actions and omissions directly contributed to decades of silence, confusion, and trauma. By suppressing disclosures, failing to investigate, and concealing their own misconduct, Defendants created conditions that prevented Plaintiffs from understanding what happened to them, impeded healing, and ensured that the harm continued long after the abuse itself.

## G. Harm to Plaintiff Ralph Ford

20. Plaintiff Ralph Ford suffered significant emotional trauma, developmental harm, and long-term psychological injury as a direct result of the foster care placement and Milwaukee County's systemic failures. During his time in foster care, Ralph experienced physical abuse, fear, instability, and the trauma of being separated from his family at a young age. The County failed to monitor his placement, failed to investigate signs of

distress, and failed to provide the emotional, educational, or psychological support required for a child in its custody.

21. As a result, Ralph developed chronic anxiety, disrupted emotional development, and long-lasting psychological effects that continued into adulthood. The County's omissions deprived him of safety, stability, and normal childhood development, causing harm that has persisted for more than six decades.

## H. Harm to Plaintiff Joe Ford

22. Plaintiff Joe Ford suffered profound emotional harm, developmental disruption, and long-term psychological injury as a direct result of the foster care placement and Milwaukee County's systemic failures. As a young child, Joe was removed from his family, placed in an unsafe foster home, and subjected to physical abuse, fear, instability, and chronic neglect. Milwaukee County failed to monitor his placement, failed to investigate signs of distress, and failed to provide the emotional, educational, or psychological support required for a child in its custody.

23. Joe exhibited behavioral changes, anxiety, withdrawal, and confusion that were ignored by County personnel. The trauma he experienced during foster care disrupted his emotional development, affected his ability to trust adults, and caused long-lasting psychological effects that continued into adulthood. The County's omissions deprived Joe of safety, stability, and normal childhood development, resulting in harm that has persisted for more than six decades.

## I. Defendants' Pattern, Practice, and Policy of Systemic Failures

24. The failures described above were not isolated incidents but part of a long-standing, well-documented pattern, practice, and policy of inadequate screening, supervision, recordkeeping, and investigation within Milwaukee County DSS, CPS, the Foster Care Division, and Wisconsin DCF. For years, these agencies operated with chronic understaffing, inadequate training, inconsistent oversight, and a culture that minimized or dismissed reports of abuse. Foster homes were routinely approved without proper background checks, supervisory visits were skipped or falsified, and abuse disclosures were ignored, discouraged, or left undocumented.

25. Mandatory reporting obligations were routinely violated, medical findings were disregarded, and critical records were lost, destroyed, or never created. These systemic deficiencies were known to agency leadership, repeatedly identified in internal reviews and external audits, yet never corrected. As a result, children in Milwaukee County's custody—including Plaintiffs—were placed in dangerous homes, left without protection, and denied the basic safety measures required by law.

26. These systemic failures directly caused the harm suffered by Plaintiffs and form the basis of their claims for relief. The County's policies and customs created conditions in which abuse could occur, continue, and remain concealed. By failing to screen foster

homes, failing to supervise placements, failing to investigate disclosures, failing to preserve records, and failing to support prosecution of abusive foster parents,

27. Defendants enabled and prolonged the abuse of Joyce Ford and the physical and emotional harm suffered by Ralph and Joe Ford. These failures were not accidental but the predictable result of institutional practices that prioritized administrative convenience over child safety. Defendants' deliberate indifference to known risks, repeated warnings, and mandatory duties directly caused Plaintiffs' injuries and constitutes a violation of their constitutional rights under the Fourteenth Amendment.

## SECTION IV — CLAIMS FOR RELIEF

### Count I — 42 U.S.C. § 1983: Substantive Due Process Violations

Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.
As minor children in state custody, Plaintiffs possessed a clearly established constitutional right to safety, bodily integrity, and protection from harm under the Fourteenth Amendment

Defendants Milwaukee County DSS, CPS, the Foster Care Division, Wisconsin DCF, and Doe Defendants acted under color of state law when they failed to screen foster homes, failed to supervise placements, failed to investigate signs of abuse, and failed to preserve or disclose critical records.

Defendants' actions and omissions directly resulted in Plaintiffs being subjected to abuse, neglect, trauma, and long-term harm while in foster care.
Defendants violated Plaintiffs' substantive due process rights by failing to protect them from known or obvious dangers and by placing them in an unsafe foster home.

### Count II — 42 U.S.C. § 1983: State-Created Danger

Plaintiffs reallege and incorporate all preceding paragraphs.
Defendants affirmatively placed Plaintiffs into a foster home that was dangerous, unlicensed, unfit, and inadequately screened.

Defendants increased the risk of harm to Plaintiffs by failing to investigate medical findings, ignoring warning signs, and relying on biased and derogatory social worker notes—including statements describing the children as "like animals."

Defendants further increased the danger by providing the District Attorney with false information about the children's father, identifying him as "Leroy Ford," a nonexistent individual, thereby preventing prosecution of the foster parent and allowing abuse to continue without accountability.

Defendants' conduct created and exacerbated the danger Plaintiffs faced, resulting in constitutional violations under the state-created danger doctrine.

## Count III — 42 U.S.C. § 1983: Monell Liability (Milwaukee County and Wisconsin DCF)

Plaintiffs reallege and incorporate all preceding paragraphs.

Defendants Milwaukee County and Wisconsin DCF maintained policies, customs, and practices that caused the constitutional violations described herein.
These policies included inadequate screening of foster homes, failure to supervise placements, failure to investigate abuse, failure to preserve records, and failure to train personnel.

Milwaukee County and Wisconsin DCF had a longstanding pattern of ignoring warning signs, minimizing reports of abuse, and failing to ensure the safety of children in foster care.

These systemic failures were the moving force behind Plaintiffs' injuries and constitute Monell liability under 42 U.S.C. § 1983.

## Count IV — Failure to Train

Plaintiffs reallege and incorporate all preceding paragraphs.

Defendants failed to adequately train social workers, supervisors, investigators, and foster care personnel in proper screening, monitoring, recordkeeping, and reporting procedures.

Defendants failed to train personnel on how to respond to medical findings of abuse, how to investigate allegations, and how to communicate accurately with law enforcement and prosecutors.

The failure to train caseworkers resulted in the dissemination of false information to the District Attorney, including the incorrect identification of the children's father, which obstructed prosecution and allowed abuse to continue.
Defendants' failure to train amounted to deliberate indifference to Plaintiffs' constitutional rights.

## Count V — Supervisory Liability

Plaintiffs reallege and incorporate all preceding paragraphs.

Supervisory officials within Milwaukee County DSS, CPS, the Foster Care Division, and Wisconsin DCF knew or should have known of the deficiencies in screening, supervision, recordkeeping, and investigation.

Supervisors failed to correct known problems, failed to discipline personnel, and failed to implement policies that would protect children in foster care.

Supervisors permitted the continued use of biased, derogatory, and unsupported social worker notes, including statements describing the children as "like animals," and failed to ensure that medical findings were properly documented and acted upon.

Supervisors also failed to ensure accurate communication with law enforcement and prosecutors, resulting in the false identification of the children's father and the collapse of the prosecution.

Supervisory failures directly contributed to Plaintiffs' injuries and constitute violations of 42 U.S.C. § 1983.

Defendants' affirmative misrepresentations to the District Attorney further concealed the truth and prevented Plaintiffs from discovering the factual basis of their claims. Plaintiffs' traumatic experiences as young children further impeded their ability to understand or recall the full extent of the abuse and neglect they suffered, making discovery of the factual basis impossible without access to official records.

## SECTION V — DELAYED DISCOVERY DOCTRINE

Plaintiffs reallege and incorporate all preceding paragraphs as though fully set forth herein.

Plaintiffs did not and could not have discovered the full extent of the abuse, neglect, and constitutional violations described in this Complaint until 2026, when previously missing foster care records were located and reviewed.

Plaintiffs were denied access to critical documents, including medical reports, social worker notes, foster care records, investigative files, and communications with the District Attorney. Many of these records were lost, destroyed, misfiled, withheld, or never disclosed.

The absence of these records prevented Plaintiffs from understanding the true nature and extent of the harm they suffered, the failures of Milwaukee County and Wisconsin DCF, and the systemic misconduct that contributed to their injuries. Plaintiffs exercised reasonable diligence throughout their lives in attempting to obtain information about their foster care placement and removal, but were repeatedly told that no records existed or that records could not be located.

Plaintiffs did not learn until 2026 that Milwaukee County personnel had provided the District Attorney with false information about the children's father, identifying him as "Leroy Ford," a nonexistent individual. This misinformation obstructed prosecution and concealed the County's failures for decades.

Plaintiffs also did not learn until recently that social worker Mr. Burgner had described the children as "like animals," a derogatory and dehumanizing statement that contradicted medical findings and contributed to biased decision-making.

The delayed discovery of these records and facts was caused by Defendants' own conduct, including inadequate recordkeeping, destruction of documents, failure to preserve evidence, and failure to disclose information to Plaintiffs. Defendants' affirmative misrepresentations further concealed the truth and prevented Plaintiffs from discovering the factual basis of their claims.

Under the delayed discovery doctrine, Plaintiffs' claims accrued when they first discovered, or reasonably should have discovered, the factual basis for their injuries. Plaintiffs could not have discovered these facts until the records were located and reviewed in 2026. Plaintiffs filed this action within the time permitted by law under the delayed discovery doctrine, and their claims are timely.

As minor children, and later as orphans without a legal guardian capable of accessing sealed foster care records, Plaintiffs had no legal ability or authority to obtain the documents necessary to discover the factual basis of their claims. Their status as minors made discovery of the truth impossible. The records necessary to understand the nature of Plaintiffs' injuries were exclusively in the possession and control of Defendants, and Plaintiffs had no reason to suspect their existence until 2026.

At the time of the events described in this Complaint, Plaintiffs were minor children, legally incapable of accessing sealed foster care records, juvenile court files, medical reports, or any documents held by Milwaukee County or Wisconsin DCF. Plaintiffs had no guardian, parent, or legal representative capable of requesting or reviewing these records on their behalf. As orphans placed under the exclusive custody and control of Milwaukee County, Plaintiffs were entirely dependent on Defendants for the preservation, disclosure, and accuracy of all records concerning their care, placement, and injuries.

Because Plaintiffs were minors and lacked any legal authority to obtain or review government records, they were unable to discover the factual basis of their claims. Plaintiffs could not investigate their injuries, could not request documents, could not challenge Defendants' actions, and could not access sealed foster care files. Their legal disability made discovery of the truth impossible.

The records necessary to understand the nature and extent of Plaintiffs' injuries—including foster care files, medical reports, investigative documents, social worker notes, and communications with the District Attorney—were exclusively in the possession and control of Defendants. Plaintiffs had no ability to obtain these records until they were located and disclosed in 2026.

Because Plaintiffs were minors, orphans, and legally disabled at the time of the events, and because Defendants concealed, withheld, destroyed, or failed to preserve critical records, Plaintiffs could not reasonably have discovered the factual basis of their claims until the recent production of documents. Plaintiffs' claims are therefore timely under the doctrines of delayed discovery, equitable tolling, and legal disability.

## SECTION VI — DAMAGES

Plaintiffs reallege and incorporate all preceding paragraphs as though fully set forth herein.

As a direct and proximate result of Defendants' actions and omissions, Plaintiffs suffered severe and lasting harm, including physical, emotional, psychological, and developmental injuries. These injuries began in childhood and continued throughout their lives, affecting their relationships, employment, mental health, and overall, well-being.

Plaintiff Joyce Ford suffered repeated sexual abuse, emotional trauma, psychological harm, loss of childhood, and long-term effects including anxiety, depression, PTSD symptoms, dissociation, trauma-related avoidance, and lifelong disruption of personal, familial, and professional stability. Joyce's injuries required ongoing mental-health treatment, impacted her ability to trust others, and caused persistent fear, shame, and emotional distress that continue to this day.

Plaintiff Ralph Ford suffered emotional trauma, developmental harm, psychological distress, and long-term effects resulting from the unsafe foster placement, the loss of family stability, and the County's failure to protect him. Ralph experienced fear, instability, and chronic anxiety as a child, which disrupted his emotional development and contributed to long-lasting psychological injury. These harms affected his adult life, relationships, and mental health for more than six decades.

Plaintiff Joe Ford suffered emotional harm, developmental disruption, psychological distress, and long-term effects resulting from the unsafe foster placement and the County's systemic failures. Joe experienced physical abuse, fear, withdrawal, confusion, and chronic neglect, all of which contributed to disrupted emotional development, difficulty trusting adults, and long-lasting psychological effects that persisted throughout his life.

Plaintiffs suffered additional harm due to Defendants' failure to preserve records, failure to disclose information, and failure to support prosecution of the foster parent, which caused decades of confusion, silence, and inability to understand the full scope of the abuse. Defendants' concealment and recordkeeping failures deprived Plaintiffs of answers, validation, and the ability to seek justice until the recent release of documents. Plaintiffs suffered economic damages, including costs associated with mental-health treatment, counseling, and other services required to address the long-term effects of the abuse and trauma. Plaintiffs also suffered loss of earning capacity and loss of employment opportunities due to the psychological injuries inflicted during foster care.

Plaintiffs suffered non-economic damages, including pain and suffering, emotional distress, humiliation, loss of enjoyment of life, loss of familial relationships, and permanent psychological injury. These harms are ongoing and continue to affect Plaintiffs' daily functioning and quality of life.

Plaintiffs also seek punitive damages against individual Defendants whose conduct was malicious, reckless, or demonstrated deliberate indifference to Plaintiffs' constitutional rights. Defendants' actions and omissions were egregious, shocking to the conscience, and warrant punitive damages to deter similar misconduct in the future.
Plaintiffs seek all damages permitted under federal law, including compensatory damages, punitive damages, and any other relief deemed just and proper by the Court.

## SECTION VII — PRAYER FOR RELIEF

Plaintiffs reallege and incorporate all preceding paragraphs as though fully set forth herein. WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and award the following relief:

a. Compensatory damages in an amount to be determined at trial for physical, emotional, psychological, and developmental harm suffered by Plaintiffs.
b. Punitive damages against individual Defendants whose conduct was malicious, reckless, or demonstrated deliberate indifference to Plaintiffs' constitutional rights.
c. Economic damages for past and future medical care, mental health treatment, counseling, and related expenses.
d. Non-economic damages for pain and suffering, emotional distress, humiliation, loss of enjoyment of life, and loss of familial relationships.
e. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law. f. Prejudgment and post judgment interest as permitted by law. g. Any additional relief the Court deems just, proper, and equitable.

## SECTION VIII — JURY DEMAND

Plaintiffs reallege and incorporate all preceding paragraphs as though fully set forth herein.
Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

## SECTION IX — EXHIBITS

Plaintiffs reallege and incorporate all preceding paragraphs as though fully set forth herein.
The following Exhibits are attached to and incorporated into this Complaint:
**Exhibit A — Doctor's Report Summary** A summary of the medical examination conducted on the same day the children were removed, documenting physical injuries, signs of abuse and neglect, and medical findings that contradicted the social worker's subjective descriptions.

**Exhibit B** — Social Worker Notes Summary A summary of Mr. Burgner's notes, including derogatory statements describing the children as "like animals," unsupported claims that the children were "dirty" and "unkept," and contradictions with the doctor's report.

**Exhibit C — Missing Records Emails Summary** A summary of communications showing that Milwaukee County and Wisconsin DCF failed to locate, preserve, or produce key foster care records for more than sixty years, contributing to delayed discovery.

**Exhibit D — District Attorney Letters Summary** A summary of correspondence showing that Milwaukee County personnel provided the District Attorney with false information about the children's father, identifying him as "Leroy Ford," a nonexistent individual, which obstructed prosecution of the foster parent.

**Exhibit E — Phone Call Documentation Summary** A phone call made on February 24,965, by Miss. Fox, the school social worker, to Mr. Burgner, the Milwaukee County social worker assigned to the children. During this call, Mrs. Fox informed Mr. Burgner that Joyce had visible bruises and stated that she did not believe Joyce's explanation that the injuries came from a school fight. Mrs. Fox reported that the bruises appeared inconsistent with Joyce's account. Although Mr. Burgner documented this call in his notes, there is no evidence that he conducted any follow-up, spoke with Joyce, visited the foster home, or initiated any protective action. This failure to respond to a report of possible physical abuse contributed to the harm suffered by Plaintiffs and to the decades-long delay in uncovering the full extent of the misconduct.

## SECTION X — SIGNATURE BLOCK

Plaintiffs reallege and incorporate all preceding paragraphs as though fully set forth herein.

DATED: October 21, 2026 Denver, Colorado

Respectfully submitted,

Joyce Ford Plaintiff, Pro Se
4368 Freeport way
Denver, CO 80239
720-933-1465
missfordj@hotmail.com

Ralph Ford Plaintiff, Pro Se
4056 Netherland St
Denver, CO 80249
720-278-9563
Tobeforreal56@gmail.com

Joe Ford Plaintiff, Pro Se
20337 E47th ave
Denver, CO 80249
303-945-9152
Joetford1953@gmail.com